THE STATE *v.* JOHN D. JACKSON.

Where a prosecutor, being drunk and partially paralized and having a belt with money around his body, was sitting with his head bent down, and alone with the defendant in his bar-room, the latter gently removed the belt and money from the prosecutor's body, upon which the prosecutor, raising his head and seeing the belt in his hand, asked him to give back his money to which he replied, "no, I'll keep it," and afterwards, upon the prosecutor's stepping out for a moment, the defendant refused to let him come in again, and never returned his belt or money, *it was held,* that these facts tended to prove a *larceny* of the belt and money by the defendant.

It is a sufficient carrying away to constitute the crime of larceny, that the goods are removed from the place where they were, and the thief has, for an instant, the entire and absolute possession of them.

The case of the *State* v. *Deal,* 64 N. C. Rep. 270, explained and approved.

Indictment for larceny, found in the Superior Court of CUMBERLAND County, but removed by the defendant to HARNETT and tried in the Superior Court of that County at the last term, before his Honor, *Judge Buxton.*

The evidence on the trial was substantially; that the prosecutor, some time in the month of March, 1870, was in the defendant's bar-room, in the town of Fayetteville, having around his body, next to his skin, a cloth belt containing money in United States Treasury notes, National Bank notes, two promissory notes of individual persons and some other papers; that he was sick, and his suspenders becoming unbuttoned, a Mr. Davis who was there remarked upon it when the defendant's bar-keeper went to the prosecutor and buttoned them up, and in doing so, said that the prosecutor had money on his person; that Davis made light of it, when the bar-keeper pulled up his shirt, the defendant being then in the room about four feet from him; that the prosecutor remained in the room sitting down, feeling very sick with his head bent down and his eyes shut, when he felt the hand of the defendant, who was then the only other person in the

20

room, at his left side, and raising up saw the wad of packages in his hand, and told him to give back his money, to which the defendant replied, "No, I'll keep it;" that he, the prosecutor, then went out and soon came back to the defendant's bar-room, when he told him to go out, and put his hand on him, and he left; that he, the prosecutor, returned next morning and asked defendant for his money, when he said that he did not have it, and had lost it; that the prosecutor had never recovered it; that before the belt with the money was taken, the prosecutor had on the same day deposited with the defendant, for safe keeping, his pocket-book, containing some money, and his shawl, neither of which articles had ever been returned to him.

The defendant's counsel insisted that if this evidence were taken to be true, it was not sufficient to support the charge of larceny, for that it proved only a trespass.

His Honor instructed the jury that if the defendant took the articles from the person of the prosecutor, under the circumstances testified to by him, with the intent to appropriate them to his own use, they should find him guilty of larceny. There was a verdict of guilty, upon which judgment was given, and the defendant appealed.

*B. &. T. C. Fuller*, for the defendant.
*Attorney General*, for the State.

SETTLE, J. The defence relied mainly upon the authority of the *State* v. *Deal*, 64 N. C. 270, but the facts of the two cases are so dissimilar, that we cannot perceive the analogy between them. In Deal's case deception was resorted to, in order to get possession of the bond, which was the alleged subject of larceny, but the deception was practiced upon a man in the full possession of all his faculties, and only extended to getting possession of the bond, and was not calculated nor intended to conceal the fact that he did have the

bond, or to evade the law. Further, he got possession of the bond under a claim of right, saying, "now I have got it and you won't get it again," and when the prosecutor seized his hand, Deal broke loose and picked up an axe, which he kept until he reached his horse, saying Tom (who was a son of the prosecutor and one of the sureties to the bond) had sent him word to get the bond as he could or might. He rode away saying, if the prosecutor would make him a title, he would pay for the land. Here the defendant evidently took advantage of the drunken condition of the prosecutor. The bar-keeper, while fastening the suspenders of the prosecutor, discovered his belt of money, and called the attention of the bystanders to it. If the defendant, who was then within four feet, had at that time, in the presence of witnesses, taken his money to keep for him, it would have been an honest, friendly act; but he waited until all had gone, and he alone was left in his bar room with the prosecutor, who was sitting with his head bent down and his eyes shut, stupefied with liquor and benumbed with paralysis, when a transaction occurs, which the prosecutor describes by saying, "I felt his hand on my left side and raised up and saw the wad of packages in his hand." When requested by the prosecutor to give back his money, he replies, "no I'll keep it." He was not so anxious to take care of the prosecutor as he was of his money, for when the prosecutor left the bar room and stepped to the next door for a moment, upon his return the defendant ordered him out, and put his hand upon him in order to hasten his movements. These, with other facts set forth in the statement, fully justify his Honor's charge, that "there was evidence to go to the jury upon the count for larceny."

At the time of the taking, the prosecutor was apparently in a situation not to know what was going on, or even if he should be aroused for a moment, the defendant may well have calculated that all remembrance of a transaction done

so gently, and in a manner not to make an impression on his beclouded mind, would pass away before he became sober.

But the jury, having by their verdict, established the guilty intent of the taking, it only remains for us to see if there was a sufficient asportation to constitute the offence of larceny. The offence was complete the moment the defendant severed the belt from the person of the prosecutor, and got it fully into his own possession. The evidence is, that "the wad of packages" was already in the hands of the defendant, when the prosecutor raised up.

In *Lapier's case,* 1 Leach. Cr. L. 320, it is held that tearing an ear ring loose from a lady's ear is a sufficient carrying away to constitute the offence of larceny, although the ring was only removed from the ear and lodged in the curls of her hair, where she found it upon reaching home.

*Lapier's case,* with others there cited, established the principle that it is a sufficient carrying away to constitute the offence of larceny, if the goods are removed from the place where they were, and the felon has for an instant the entire and absolute possession of them.

Judgment affirmed. Let this be certified.

PER CURIAM. Judgment affirmed.