GUS. GETTINGER AND CHRIS. DAHL, PLAINTIFFS IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Larceny:** INDICTMENT: EVIDENCE: VARIANCE. On the trial of an indictment charging the larceny of "a cast-iron balance-wheel," the evidence was that, in order to facilitate its removal and disposition to their use, the prisoners broke the wheel in pieces, thereby depriving the material composing it of its former character, converting it into "old iron," and as such disposed of it. *Held*, No variance. That the destruction of the wheel was simply a part of the act of taking, and resorted to for the more successful accomplishment of the theft.

2. ——: ——: ——. In such case the article as it was at the inception of the taking, must govern in determining the degree of criminality attaching to the act.

3. **Feloniously Take and Carry Away.** To take an article feloniously is accomplished by simply laying hold of, grasping or seizing it *animo furandi*, with the hands or otherwise. And the very least removal of it from the place where found, by the thief, is an asportation or carrying away.

4. **Mistake as to Ownership of Property Stolen no Defense.** The supposition of the thief that the article stolen belonged to one indebted to him is no defense, not even if the supposition were true.

5. **Finding of Value:** ERROR IN. A finding of the value of property stolen to be much less than the evidence showed it to be, but still enough to make the offense grand larceny, although erroneous, is without prejudice to the accused, and not a ground for a new trial.

6. **Failure to Charge Jury.** Before error can be predicated upon the failure of the judge to charge the jury upon a given point, he must be requested to do so.

ERROR to the district court for Otoe county. Tried below before POUND, J.

*Frank T. Ransom* and *T. B. Stevenson*, for plaintiffs in error.

1. If there was not a variance, the evidence ought to show that the prisoners stole a cast-iron balance-wheel and that it was stolen at some particular time. But the evidence shows a trespass perhaps on one day, and a removal of part of the wheel after it had been destroyed on the same day, and at least one day intervened between the carrying away of the first part and the carrying away of the last. If a larceny was committed, when was it? Was it the first day or the second day? Was there a larceny of the wheel committed on the first day? If so, where was the wheel? On the foundry premises, or on the premises where the pieces of the spokes and hub had been carried? Was there an asportation of a wheel? We think not. 1 Whart. Crim. Law, 928, note 3, (8th ed.) 3 Greenleaf Evidence, 152. *Com. v. Beaman,* 8 Gray, 497. 9 N. W. Reporter, July 2, 1881, page 389. Whart. Crim. Ev., 146, and 121. 2 Bishop Crim. Prac., 710 and note (2d ed.) 2 Bishop Crim. Law, 765 (6th ex.) *State v. Horan,* Phil., N. C., 571. *Com. v. Gavin,* 121 Mass., 54.

2. On question of admissibility of Dahl's conviction, see *Com. v. Ingraham,* 7 Gray, 46.

*C. J. Dilworth,* attorney general, for the State.

LAKE, CH. J.

As shown by the brief of counsel for the prisoners, four points seem to be relied on for obtaining a new trial in this case. The important one, however, and the one most relied on is the first, viz., that there was a fatal variance between the allegation of the indictment and the evidence as to what was stolen.

The indictment charged the larceny of " a cast-iron balance-wheel of the value of one hundred and fifty dollars." The point of alleged variance lies in the fact that, in order to facilitate its removal from the place where found, and disposition of it to their use, the prisoners broke the wheel

in pieces, thereby depriving the material composing it of its former character, converting it into "old iron," and as such disposed of it. We are of the opinion that this was no variance. The destruction of the wheel was simply a part of the act of taking—a means to an end—and was resorted to for the more successful and safe accomplishment of the theft.

The evidence shows the wheel to have been of very great weight, probably considerably over two thousand pounds; its removal, therefore, to the place where the prisoners sold it, was a somewhat difficult task, but was effected the more easily, and with less chances of detection by destroying its character and identity. They therefore, resorted to the scheme of breaking it in pieces. Now there is no rule of criminal law that we are aware of by which such destruction of an article stolen can advantage the thief if, fortunately, he chance to be discovered. It ought really to be held to aggravate the crime, for, although the owner may discover and regain the material of which the article was composed, its chief value to him is forever gone.

Counsel would have us say that, although it is true that when the prisoners set upon this property with the felonious design of converting it to their own use, it was a shapely mass of iron—in form a wheel—and as such worth a hundred and fifty dollars, yet inasmuch as in order to enable them the more successfully to carry out that design they changed entirely its form, and in doing this reduced its value to that of old iron merely, and less than thirty-five dollars, they must either go entirely acquit, or suffer only the comparatively mild penalty provided for petit larceny. Than such a ruling as this would be, a more striking travesty upon the criminal jurisprudence of a state could not well be imagined.

Let us see, for a moment, how such a rule would operate as to another kind of property. For instance, a thief

enters a jewelry store, and seeing an opportunity to steal a valuable watch, worth say a hundred dollars, resolves to do so, but reflecting that, because of its value, the crime might be grand larceny, he hesitates. Soliloquizing, he says: "Now, although I am resolved to deprive the jeweler of that watch, and am quite willing to take the risk of a conviction for petit larceny in doing so, still I am a little uneasy in the reflection that perhaps its value may be such as to give me a term at hard labor in the penitentiary if I am found out." But a happy thought comes to his relief and he says: "Now the chief value of this watch is not so much in the materials of which it is composed as in its complex and beautiful mechanism, the curious and perfect adjustment of its various parts, its form; therefore, if I but first deprive it of these qualities there will be no danger of the greater penalty, for its reduced value will surely bring my offense below the grade of grand larceny." Thereupon he seizes the delicate article, crushes it into a shapeless mass, deprives it of its form and value as a watch, makes off with it, and by a sale for what it will bring as old metal, converts it to his own use. Under such circumstances would not a conviction of the thief of the crime of grand larceny for stealing the watch be proper? As the law really is we think it would, but not if the law were as we are requested to declare it to be.

Nor is the case of the prisoners here different in character from that of the supposed thief. The destruction of the wheel, like that of the watch, was a part of the act of taking, and was a mode of converting it to their own use. The felonious intent, which is the gist of the offense, was present, prompting the act, and whether the property were taken carefully so as to preserve its form and value intact, or violently so as to destroy or greatly injure it in respect to these qualities, can make no sort of difference as to the character of the offense. The article as it was at the inception of the taking must govern in determining the degree of criminality that attaches to the act.

The indictment charges that the prisoners did "take and carry away the wheel. To take an article signifies merely to lay hold of, grasp or seize it with the hands or otherwise.— *Webster*. With this understanding of the meaning of the term, can it be reasonably said that the act of the prisoners in laying hold of, and with a sledge breaking the wheel in pieces, *animo furandi*, was not a taking of it within the contemplation of the criminal law? We think not.

As to the asportation or carrying away of the wheel, which is another necessary ingredient of the alleged offense, the rule is, that the least removal of it by the prisoners from the place where they found it was sufficient. 2 Broom & Had. Com. (Am. Ed.), 514. 3 Greenleaf on Ev., Sec. 154. Even if the removal were but a hair's breadth, it will do. *Harrison v. The People*, 10 Am. Repts., 517. And we think such removal might be properly inferred from the seizure of the wheel, the mode of breaking it, and the subsequent disposition made of its parts.

Another point that seems to be relied on by counsel for the prisoners is, that one of them supposed the wheel belonged to a person who owed him for labor. Such a supposition, even if it were true, was neither a justification nor an excuse. The law does not permit a creditor to make collection of what is due him by a larceny of his debtor's goods. For these reasons the seventh instruction to the jury, the only one now complained of, was not erroneous.

The prisoner Dahl was a witness, and testified in his own behalf. As tending to impeach his credit with the jury, the record of his conviction for obtaining money under false pretences was introduced on behalf of the state. It is now urged as error, that the jury were not instructed that this record "should not be considered by them as against the defendant Gettinger," who was also a witness. While such an instruction would have been proper enough;

inasmuch as it was not asked there was no error in not giving it. Besides, we are entirely satisfied that Gettinger could not have been prejudiced by the omission complained of for the reason that, upon the record being offered, it was ruled upon objection, to be admissible only as affecting the credibility of Dahl as a witness. The jury could not possibly · have misunderstood its import, nor the effect they might properly give it. Before error can be predicated upon the failure of the judge to charge the jury upon a given point, he must be requested to do so.

Finally, it is urged that the finding of the jury upon the question of the value of the wheel was unwarranted by the evidence. This is true. The evidence showed its value to be not less than one hundred and fifty dollars, while the jury fixed it at forty only. This, however, was without prejudice to the prisoners, and is not a ground for reversing the judgment, which must be affirmed.

JUDGMENT AFFIRMED.

MAXWELL, J., dissenting.

I am unable to concur in the judgment of affirmance in this case for the following reasons: *First,* The plaintiffs in error were indicted for the larceny of a balance-wheel owned by one Alonzo W. Shepherd. The testimony tends to show that one, or perhaps two, of the arms of this wheel were broken at the time Shepherd left the same at the foundry in 1874. Is it not somewhat remarkable that Shepherd should bring the wheel from Cass county, a distance of many miles, and take it to a *foundry?* And it is pretty clear that it was taken there because it was necessary to have it recast before it was safe as a balance-wheel. After the foundry was removed, the wheel lay partly buried in the earth for a number of years before it was carried away by the plaintiffs in error, and had ceased to be of any value except as old iron. And this in substance is the tes-

timony of William Brown, whose testimony is not directly denied.

The testimony of Shepherd, that the reason he took the wheel to the foundry was because it was near his residence, and it was inconvenient to leave it at such residence, is not very satisfactory, and fails to furnish a sufficient reason why he should leave an imperfect balance-wheel at a place where he seems to have had no right, and where it was proposed to permit it to remain for an indefinite period.

*Second,* The jury found the value of the property to be forty dollars. The testimony as to the value of this property as a *wheel* fixed it at $150. The jury, therefore, must have found that it was valuable only as old iron. The value of old iron per hundred is proved to be from fifty to seventy cents per hundred pounds, and this testimony is not denied. The exact weight was not proved, the testimony showing the weight to be from 1700 to 2850 pounds. If we take the highest estimate, at the highest price proved, the value was less than twenty dollars, and the jury could not have found the accused guilty of grand larceny. The judgment of the district court should be reversed and the case remanded for a new trial.