# WHEELING.

## STATE OF WEST VIRGINIA v. CHAMBERS.

Submitted September 20, 1883—Decided October 27, 1883.

1. In a prosecution for simple larceny in this State, it is sufficient to prove that at the time the offence was committed, the actual or constructive possession of the property stolen, was in the person, alleged in the indictment, to be the owner thereof. See Code, sec. 7, ch. 158. (p. 784.)

2. In this State the distinction between simple larceny and *larceny from the person*, except where it is accompanied with such force and fear, as will raise the crime to robbery, does not exist, and all larceny not amounting to robbery, is simple larceny. (p. 789.)

3. To constitute the crime of simple larceny, there must have been a felonious taking of the property from the possession of the owner, and the thief must, for an instant at least, have had complete and absolute possession of the stolen property, and that during such possession and control, he must have feloniously removed the same from the place it occupied just before he grasped, seized or laid hold of the same. (p. 799.)

4. Where property has been so feloniously taken from the owner, the slightest removal thereof, by the thief, from the place it occupied, even if it be but a hair's breadth, with intent to steal the same, will complete the offence of simple larceny. (p. 791.)

5. In such a case, although the whole article has not been removed from the whole space, which the whole article occupied before it was so taken ; yet if every part of the article be removed from that particular space, which that particular part occupied just before it was so taken, such removal is a sufficient asportation to complete the offence of simple larceny. (p. 799.)

6. If the court which tried the cause, overrules a motion for a new trial, on the ground that the verdict was contrary to the evidence, and the court certifies all the evidence introduced at said trial, instead of the facts proved, and the testimony on behalf of the party making said motion, be in conflict and irreconcilable with that offered by his adversary, the court in considering said motion ought to disregard all such conflicting oral testimony offered on behalf of the maker of said motion ; and if the remaining testimony tends to support said verdict, the motion for such new trial ought to be overruled, unless such testimony be *clearly insufficient* to support such verdict. (p. 799.)

7. If a person thrust his hand into the pocket of another with intent

to steal his pocket-book and the money contained therein, and seize or grasp said pocket-book, and lift or raise the same to the top of the pocket, and upon being detected, release his grasp thereon, and the pocket-book be left hanging partly out of the pocket, then such taking and removal, is a sufficient "taking and carrying away" to complete the offence of simple larceny. (p. 799.)

8. In such a case, the thief has had such complete and absolute possession and control of such property, as to constitute the felonious taking thereof, and the least removal thereof will complete the offence of simple larceny, although the thief may instantly relinquish the property or restore it to the owner. (p. 799.)

9. If on the trial of a cause one party offers to introduce evidence to the jury to which the other objects, and his objection is overruled and such evidence is introduced, such objector, if he would not be considered as waiving his said objection, must except to the opinion of the court. (p. 780.)

WOODS, JUDGE, furnishes the following statement of the case:

On the 9th day of April, 1883, Joseph Chambers was indicted in the circuit court of Ohio county for the simple larceny of a pocket-book containg thirty-eight dollars in money from Elizabeth Emblen in the city of Wheeling, in said county on the 16th of December, 1882. The indictment which contained two counts, was in the usual form. In the first count, the pocket-book and money were alleged to be the property of James Emblen; in the second count the said pocket-book and money were alleged to be the property of said Elizabeth Emblen. The prisoner demurred to said indictment, and to each count thereof, which was overruled. Upon the trial, the jury found the "prisoner guilty as charged in the indictment."

The prisoner moved the court to set aside the verdict and grant him a new trial, on the grounds that it was contrary to the evidence. First, because the evidence failed to show the ownership of the pocket-book and money, as charged in the indictment; and secondly, because the evidence showed there was no asportation of said property alleged to have been stolen. This motion was overruled, and the prisoner excepted, and thereupon the court certified all the evidence given upon the trial, and pronounced judgment upon the

verdict that the prisoner be confined in the penitentiary of this State for five years.

To this judgment the prisoner obtained a writ of error from this Court.

*W. W. Arnett* for plaintiff in error.

*Attorney-General Watts* for the State.

WOODS, JUDGE:

The circuit court having certified the evidence, instead of the facts proved, on which the jury rendered their verdict, this Court will be obliged to do as they did, and disregard all the evidence offered by the prisoner, which was in conflict with that offered by the State, for the jury must have disregarded it altogether, as the only witness examined on behalf of the prisoner was himself, who denied every material fact in regard to the alleged larceny, testified to, by the said Elizabeth Emblen, and the witness Mary Gill, both of whom testified that the prisoner committed the larceny for which he stands indicted. The prosecutrix Elizabeth Emblen testified as follows: "I am the wife of James Emblen. On the morning of the 16th December, 1882, I was in the market house of the city of Wheeling in Ohio county. I was pricing a turkey which a lady was lifting out of a box. I was in a stooping posture, my attention was turned to the turkey. I had in my pocket eight dollars in silver. I had also my pocketbook, which was worth about one dollar, or one dollar and a quarter, and in it thirty-eight dollars in notes loose in the pocketbook. My pocket was a pretty deep one. The prisoner while I was examining the turkey was pushing up against me. I felt the prisoner's hand in my pocket. I felt him grabbing in my pocket. I grabbed with my hand quick, as quick as I could, *this* way (slapping herself on the thigh); he had his left hand in my pocket, and when I grabbed his hand so quick, I kept him from hauling the pocketbook out. He had to go a good way into my pocket, it was pretty deep. I had a large shawl on, and an apron, and when I lifted up my apron to see, my pocketbook was hanging out of my pocket. If I had gone a step or two

it would have dropped out. I felt his hand, as I went with my hand to grab his hand when I felt it in my pocket. I grabbed his hand as I felt it coming out, to hold it, but I could not do it; he was too big and strong; but I didn't catch hold of his hand for he was too quick for me. I called him a dirty thief; he found the people coming round and he slipped into the market house. I knew he tried to get away with the pocketbook for I could feel him, and when I lifted up my apron my pocketbook was hanging out of my pocket. I did not know it until I put my hand down." The evidence of the prosecutrix was corroborated in almost every material fact by the witness Mary Gill, who in addition to other matters testified as follows: "My business is selling in the market. I was there the same day this thing happened. I saw the prisoner come across the street. He went past our stand very slow; went on down to Mrs. Brown's. Mrs. Emblen was pricing something at the wagon; the prisoner walked down that far and stopped. I said I am going down. As soon as I got there, the prisoner had just taken his left hand out of her pocket, and Mrs. Emblen turned round and says, 'You dirty rascal, you nearly had my pocketbook.' It was an old-fashioned pocketbook. All her bills, &c., were hanging out of her pocketbook, and as soon as she said that, he disappeared. The prisoner was standing right up against Mrs. Emblen. His hand was right down by her side. I saw him have his hand in her pocket, and he jerked his hand out. As soon as she said '*you dirty rascal*,' he went away. When he took his hand out of her pocket, the bills were all hanging out. The pocketbook was open, and the bills were hanging out. I saw it when he withdrew his hand from her pocket; the pocketbook was hanging from the outside of her pocket." Much of this evidence was corroborated by other witnesses on the part of the State, one of whom proved that when taken before the justice the prisoner refused to tell his name, but none of it was contradicted by any witness except by the prisoner himself, who was examined as a witness on his own behalf, and who admitted that he was in the market house that day, and was charged by Mrs. Emblen with taking her pocketbook, but denied "that he attempted to take her pocketbook, or that he did anything to her that morning."

Upon this evidence the prisoner was convicted of the larceny of the pock  book and money, as charged in the indictment.

It is now insisted in argument by the counsel for the plaintiff in  ror, that this verdict is not warranted by the evidence, the  the larceny charged, was a *larceny from the person*, and that as the property was not wholly taken and removed from the person of Mrs. Emblen, the prisoner did not have such possession and control of the property, as would complete the offence of *larceny from the person*, and that the prisoner at the most, was only guilty of an attempt to commit the felony charged in the indictment; and that "cases having relation to thefts committed elsewhere than from the person, are not in point in this investigation."

Another ground of error alleged is, that the court upon the trial permitted evidence to be given to the jury tending to show that the prisoner had perpetrated "other acts of larceny or attempted larceny than that charged in the indictment." But an examination of the record shows, that when such evidence was offered to be introduced by the State, the court refused to allow the same to be introduced, but that afterwards, when the prisoner had been examined, and testified in his own behalf, and had pretended to give an account of where he came from, whither he was going, where he had resided and how he had deported himself before the commission of the offence alleged against him, the court permitted the State to introduce evidence tending to show that the prisoner's statements were untrue, and lest the jury might consider such testimony as tending to show the prisoner was guilty of other larcenies than the one for which he was indicted, "the court upon its own motion, before the jury retired, instructed them that they were not to take into consideration the evidence introduced tending to show that the prisoner had been guilty of attempts to pick the pockets of others than Mrs. Emblen on the question of the guilt of the accused; that such testimony had been permitted only to affect the question of the credence to be given to the testimony of the accused, and that they were to consider it in this light alone." But it is not necessary to consider whether such testimony was admissible under the circumstances or not. It was not excepted to, and it is too late to object to it here.

It is also insisted, that the circuit court erred in refusing to set aside said verdict, because there was no evidence of the ownership of the money and pocket-book charged in the indictment to be the property of said Elizabeth Emblen or of said James Emblen. It is true, that the ownership of the property must be proved as laid in the indictment—2d Va. Cases 396—but it is sufficient if proved as laid in either count of the indictment. In this case it was proved that the pocket-book and money were in the actual possession of the said Elizabeth Emblen, at the time the prisoner thrust his hand into her pocket, and seized, and attempted to abstract the same. The proof of *this fact*, is sufficient proof of her ownership of the property as laid in the second count in the indictment. Section 7 of chapter 158 of the Code expressly declares that, "In a prosecution   *   *   *   *   for stealing   *   *   *   *   any personal estate it shall be *sufficient to prove*, that when the offence was committed, the actual or constructive possession,   *   *   *   *   in whole, or any part of such estate was in the person   *   *   *   *   alleged in the indictment   *   *   *   * · to be the owner thereof." We are therefore of opinion that the circuit court did not err in refusing to set aside the verdict for that cause, as the proof of the actual possession of property by Elizabeth Emblen at the time the offence was committed was sufficient proof of her ownership thereof.

The only question remaining to be considered is whether the facts proved in this case constitute the offence, of *the larceny, charged in the indictment*, or only an *attempt to commit that offence*. It is contended by the counsel for the plaintiff in error, that as the *facts proved* show only an unsuccessful effort to steal from the person, that he was guilty only of the *attempt*, and not of the larceny itself. It does not seem to have occurred to the counsel, that at the common law, every *larceny from the person*, necessarily included, a *simple larceny*, for which the prisoner could have been convicted, even when indicted for the offence of *larceny from the person*, and *a fortiori*, when he was indicted for the *simple larceny* of the same property, he could only be convicted of *that* offence, although the facts proved on the trial, showed that he was in fact guilty of the graver offence of *larceny from the person*.

The question now under consideration is one of great interest to the legal profession. While every member of it possesses a correct general knowledge of the principles involved in it, yet comparatively few, have either the disposition, or the leisure to study with critical accuracy, the reported cases which have come down to us from the courts of England, which in fact constitute the foundation of text writers, and of modern decisions upon the same subject. While some of these case cases may seem to be inconsistent or at variance with others, yet a careful examination of the *character of the indictments*, and the circumstances in each case, will remove most of the apparent incongruities, and show them to be entirely consistent with those principles of the common law, applicable to all kinds of larceny, whether "*simple, or compound or mixed.*" The fact that the particular question now under consideration, has never been directly passed upon by the supreme court of appeals of Virginia, or of West Virginia, will excuse a recurrence to first principles, which under other circumstances, might be considered an unprofitable and useless task.

Larceny, has been variously defined by the highest authorities, but all agree that the same elements enter into its composition. Lord Coke defines *simple larceny* to be "the felonious taking and carrying away by any man or woman of the mere personal goods of another, neither from the person, nor by night in the house of the owner." Coke's P. C. p. 107. Blackstone in his Commentaries, defines larceny to be the felonious taking and carrying away of the personal goods of another. Book 4 p. 230. Mr. Bishop in his criminal law defines larceny "to be the taking and removing by trespass of personal property which the trespasser knows to belong either generally or specially to another, with intent to deprive such owner of his ownership therein, and perhaps should be added, for the sake of some advantage to the trespasser."

Mr. Wharton defines it to be "the taking and carrying away of a thing unlawfully, without claim of right, with intention of converting it to a use, other than that of the owner." Whar. Cr. L., sec. 862. Mr. Archbold says "simple larceny at common law, is the taking and carrying away of

the personal goods of another of any value, against the will, or without the consent of another without any *bona fide* claim, or right with a felonious intent." Hawkins says: "Simple grand larceny is a felonious and fraudulent taking and carrying away, by any person of the mere personal goods of another, not from the person, nor out of the house, above the value of twelve pence." Hawk. P. C., ch. 33 sec. 1.

Mr. Greenleaf adopts as the most approved of all the definitions of larceny, that of Mr. East, namely: "The wrongful or fradulent taking and carrying away by any person of the mere personal goods of another from any place, with a felonious intent to convert them to his (the taker's) own use, and make them his own property without the consent of the owner." And this definition is adopted by Mr. Russel. 3 Greenl. Ev. sec. 150; 2 Russ. on Cr. L. ch. 10, p. 146. None of these definitions are believed to be perfect, and to embrace every case that has arisen, or which may hereafter arise, and the different phraseology of the modern definitions, has been adopted in the vain effort to embrace in one definition, all the cases, which the courts from time to time have held to be within the spirit of the older definitions, though apparently not embraced by the later of them. As interpreted by the adjudicated cases, they are all sufficiently comprehensive. At the common law larceny is distinguished into to two sorts, the one called *simple* larceny, or plain theft unaccompanied with any other atrocious circumstances; and *mixed* or *compound* larceny—which also includes in it the aggravation of a taking from one's house or person. Blk. Com. Bk. 4, p. 229; 2 East. P. C. ch. 16, sec. 1 & 118. Larceny from the person is either by privately stealing, or by open and violent assault, which is usually called robbery. Privately stealing from the person, as by picking his pocket or cutting his purse was not otherwise regarded or punished by the common law than as simple larceny, until the Stat. of 8th Elisabeth ch. 4, when, to more effectually suppress the cutting and picking of purses, it was enacted, " that no person indicted or appealed for felonious taking of any money, goods or chattels from the person of any other *privily without* his knowledge in any place whatsoever; and thereupon found guilty by verdict or shall confess the same upon his arraignment, *  *  *  *

shall be admitted to the benefit of clergy and shall suffer death." Under this statute it was held that there must have been an actual taking from the person; a taking from his presence was not sufficient as it was in robbery. But in order to convict a man of this offence, and inflict the penalty of death, it was necessary that the *indictment* should lay the offence to have been done *privily without the knowledge of the party*, in exact pursuance of the words of the statute, otherwise the prisoner would have been entitled to his clergy, and so he would have been if the value had not been laid as well as proved to be above twelve pence. East's P. C. ch. 16, §§ 122, 123. Simple larceny, at common law, as it still is with us, was divided into grand larceny, where the property stolen exceeded in value twelve pence, and into petit larceny, where the value was twelve pence or under, but both were felonies, and were distinguished by the punishments inflicted, that of grand larceny being death, and of petit larceny, whipping or some corporal punishment. To many felonies at common law, the benefit of clergy attached, whereby the party convicted thereof, was, for the first offence, exempted from capital punishment, but it was never allowed in high treason, petit larceny, nor in any misdemeanor. The benefit of clergy was at first confined to clergymen in a few particular cases, but the exemption was gradually extended, as well in regard to the crimes themselves, of which the list became quite universal, as in regard to the persons exempted, until it included *every one who could read*, while the ignorant and unlearned were left to be hanged for the commission of the same crimes, for which those who could read, suffered the slight punishment of being burnt in the hand. By the Statute, 6th Ann, ch. 6, the benefit of clergy was extended to every one entitled to ask it, without requiring them to read, by way of conditional merit. Blk. Com. B. 4, p. 370–374. In nearly all felonies, including grand larceny, the convicted felon was entitled to the benefit of clergy, and Blackstone in his Commentaries lays it down as a rule, that in all felonies, whether new created, or by common law, clergy is now allowed unless taken away by express words of act of Parliament. 4 Blk. Com., p. 373. When therefore the Stat. of 8th Elisabeth deprived those of the

benefit of clergy who were convicted by verdict, &c., of fe-
loniously taking money or goods from the person of another
*privily without his knowledge*, it vastly increased the punish-
ment, but did not *alter* the *nature of the felony.* Hale's P. C.
529. It is therefore apparent that every larceny committed
*privily from the person of another without his knowledge*, necessa-
rily included the simple larceny of the same, money or goods,
for stealing which, if not so taken from the person, the thief
would have been entitled to the benefit of clergy. But in
order to deprive the thief of the benefit of clergy, and to in-
flict the punishment of death for the first conviction of grand
larceny, it was necessary to allege in the indictment and
prove upon the trial, that the property taken exceeded in value
twelve pence; that it was not only feloniously taken, but
that it was so taken *from the person* of the owner *privily and
without his knowledge ;* in other words, it was necessary to allege
and prove every act, fact and intent necessary to convict the pris-
oner of the simple larceny of the same goods, and in addition
thereto, to allege and prove, that the said goods "had been
feloniously *taken from the person* of the owner, privily *and
without his knowledge ;*" and so the thief might be guilty of the
simple larceny of the goods, yet not be guilty of the larceny
thereof from the *person of the owner* ; but if guilty of the latter
offence, he was necessarily guilty of the simple larceny of the
same goods. It must be borne in mind that said Stat. of 8th
Elisabeth, does not use the term "larceny" nor its equivalent
"feloniously *taking and carrying away*," but uses only the
words, "*feloniously taking of any goods, &c., from the person* of
any other privily," &c. While the statute was not intended
to create a new offence, it did intend that the terms, "*taking
from the person*," although less comprehensive in their signifi-
cation, should in such cases be held as equivalent to the
terms "*taking and carrying away.*" A statute of similar im-
port dispensing with the necessity of alleging or proving the
"*carrying away of goods*," when the theft is committed by
privately stealing from the person of another, exists in the
State of Texas, which expressly declares, that the theft must
*be from* the person and committed without the knowledge of
of the person from whom the property is taken, or so sud-
denly as not to allow time to make resistance before the

property is carried away." R. S. ch 10 of Penal Code. For *simple larceny*, another chapter of said Penal Code provides a heavier penalty. In the State of New York a statute has for many years been in force which imposes upon a party convicted of larceny from the person, the same punishment imposed for *grand larceny*, whatever may be the value of the property so stolen. 3 R. Stat. N. Y. p. 953 sec. 81. From what has been said, it follows that wherever the common law is in force, and no statute exists prescribing a different punishment for larceny *from the person*, than for other larcenies, all larcenies from the person become simple larcenies, and whether such statutes exist or not, all offenders guilty of larcenies from the person, may nevertheless be indicted and tried for the simple larceny included therein, and they must be so tried unless specially indicted under, and in pursuance of such statutes. Where no such statute exists, the distinction between larceny from the person and other larceny, does not exist, and every larceny not rising to the grade of robbery becomes *simple larceny*. In this State no such statute exists, and all larcenies not rising to the crime of robbery, are *simple larcenies*, and punishable in the same manner. In this State "simple larceny of goods and chattels, if they be of the value of twenty dollars or more, shall be deemed grand larceny and punished by confinent in the penitentiary not less than two, nor more than ten years; and if they be of less value, shall be deemed petit larceny and punished by confinement in jail not exceeding one year." Code, ch. 145 sec. 14. This was also the law of Virginia from which our statute was taken. Code of Va. p. 789 sec. 14.

Bearing in mind these distinctions, we will glance over the well settled principles of the law touching the essential circumstances, necessary to be established in trials for simple larceny

All the authorities agree in stating that in every larceny, there must be an actual taking, or severance of the goods from the possession of the owner, and this taking must be felonious—"*animo furandi*." To "*take*" an article, signifies "to *lay hold of, seize* or *grasp it with the hands* or *otherwise.*"— *Gus. Gettinger* v. *State,* 13 Neb. 308. Doing the same act, *animo furandi*, constitutes a felonious taking. The man who

laid his hand upon the horse in the close, or grasped the
package in the head of the wagon, or seized the sack in the
boot of the coach, or laid hold of the article fastened to the
counter by the string, with intent to steal these several arti-
cles, was guilty of the felonious *taking* thereof, although
neither of them was ever in fact removed in whole or in part
from the places, where they were respectively "laid hold of,
grasped or seized." But this *felonious taking* does not consti-
tute the offence of larceny. The property so taken, must
also be "*carried away.*" It need not be retained in the pos-
session of the thief. Any removal, however slight, of the
entire article, which is *not attached* either to the soil or to any
other thing not removed, is sufficient, but nothing short of
this will do. Therefore, if the thief has the absolute control
of the thing but for an instant and he removes it, ever so lit-
tle space, the larceny is complete; and the thief has been
held to have had such instantaneous possession, where he
lifted the mail sack, which he means to steal, from the bot-
tom of the boot of the coach, but was detected before the
sack was completely above the space it had occupied; and
where he has with felonious intent seized another's pocket-
book, in his vest pocket, and lifted it about three inches
from the *bottom* of the pocket, when his operations were inter-
rupted; and where he went behind the counter, opened the
money-drawer, grasped in his hand three piles of bills, and
without taking any out of the drawer, relinquished his grasp
upon the bills, in the drawer, but not the exact places he
found them—their positions in the drawer only having been
changed, when he was detected; and so, when the thief
grasped the pocket-pocket which was in the inside pocket of
the owner's coat, and lifted the book *one inch above* the pocket;
and also where the owner's watch, secured to his vest by
passing the watch-key through the button-hole, was grasped
by the thief, and the key forcibly drawn through the button-
hole, when he was instantly seized by the owner's wife, and
the key accidently caught on a button whereby he was pre-
vented from making off with it; and also where the thief
snatched a diamond ear-ring from a lady's ear, which he
instantly dropped, and which was afterwards found in the
curls of her hair. *Rex* v. *Walch*, 1 Moody 14; *Harrison* v.

*People*, 50 N. Y. 518; *Flinn* v. *State*, 42 Tex. 301; *Eckels* v. *State*, 20 Ohio 508; *Rex* v. *Thompson*, 1 Ry. & M. 78; *Rex* v. *Simpson*, Dears. C. C. 421; 2 Russ. on Cr. 359; *Rex* v. *Lapier*, 2 East C. C. 557; *State* v. *Jackson*, 65 N. C. 305; *State* v. *Jones*, *Ib.* 395; *State* v. *Green*, 81 N. C. 560. Upon the question of what is a sufficient asportation or *carrying away* of goods feloniously taken, the authorities both ancient and modern uniformly hold, that the felony lies in the very *first act of removing* of the property, and therefore the *least removing* of the thing taken, from the place it was before, with intent to steal it, is a sufficient asportation, though it be not quite carried off; and if any part of the thing is removed from the space, that part occupied, though the whole thing is not removed from the whole space which the whole thing occupied, the asportation is complete; therefore drawing a sword partly out of the scabbard, will constitute a complete asportation; so if the party direct the hostler of an inn to bring out a horse which he points as out as his own, and the hostler leads him out for him to mount; and so, where the party intending to steal it, lifted a sack from the bottom of the boot of a coach, and was detected before he got it out of the boot, although it appeared that the bag was not completely removed from the space it at first occupied in the boot, but the raising of it from the bottom of the boot, had completely removed each part of it from the space which that specific part occupied, this was held a sufficient asportation. And where the prisoner drew a book from the inside pocket of the prosecutor's pocket, about an inch above the top of the pocket, but while the book was still about the person of the prosecutor, he suddenly put up his hand, upon which the thief let the pocket-book drop, and if it fell back into the prosecutor's pocket, this was held a sufficient asportation to constitute the offence of simple larceny. So, also snatching an earring from a lady's ear, which the thief instantly dropped in the curls of her hair, where it was afterwards found; so also to remove a package from the head to the tail of a wagon, with intent to steal it, so where a party with such intent leads a horse a short distance in the owner's close, but was apprehended before he got him out. Whar. Cr. L. sec. 923; 2d Russ. on Cr. 152; 1st Hawk. P. C. 141;

Arch. Cr. Pl. & Er. 362, 380; 2d East P. C. 557; 1st Leach. 320; 2d Bish. Cr. Ls. 795; 3d Greenl. E. sec. 154, 155; Blk. Com. Book 4, p. 231; Bacons' Abr. Felony, D.

The felony lies in the very first act of removing the property, for the act of the mind, declared by the subsequent facts makes the crime. Bacon's Abridg't, *supra.*

A brief examination of some of the reported cases, will tend to a clearer comprehension of the points just stated.

In the case of the *State* v. *Gazell*, reported in 30 Mo. 92, the prisoner was indicted for horse stealing. On the trial it was proved, that the horses were in an inclosure; that a man was seen leading one of the horses within the inclosure with a line or bridle; and the court instructed the jury, that if the prisoner took and led the horse away any distance, with a felonious intent, the asportation was complete. Upon a writ of error, the supreme court of that State held the instruction correct, and Scott, Judge, delivering the opinion of the court said, "The least removal of the thing taken from the *place* where it *was before*, is a sufficient asportation."

In *Harrison* v. *People*, reported in 50 N. Y. 518, the prisoner was indicted, and convicted of *simple larceny*, upon the following facts proved on the trial: Henry H. Bull on the 25th May, 1872, was entering the door of a street car in the city of New York, having in his pocket-book in his breast coat pocket twenty-five thousand dollars in money and securities. As he was entering the door he was met by the prisoner, who put his hand in Mr. B.'s pocket, seized the pocket-book and lifted it about three inches *from the bottom* of the pocket, when he was discovered by Mr. B. who seized the pocket-book and thrust it back into his pocket. The prisoner's counsel as in this case, insisted that these facts constituted only an *attempt* to commit larceny, and asked the court to so instruct the jury, which the court refused to do, but did instruct them "that the least removal of the property from the place where it is deposited, is a sufficient '*carrying away*' to constitute the offence of larceny, provided such removal was of a felonious character." Upon a writ of error the supreme court of appeals of that State, held the instruction given, correct. Folger, Judge, delivered the unanimous opinion of the court in that case, said: "That in this case

the prisoner was indicted for simple larceny, and not for stealing from the person; that the hand of the prisoner was about the pocket-book, controlling it and taking it away; indeed had taken it away every part of it from the space which that part had occupied before his touch; it was in his possession; he directed and for the instant of time controlled its movements, no material physical thing hindered him; B. for that instant of time did not control or possess it, but feeling the prisoner raising the book, threw up his hand, pressed the book, caught it as it was going and regained possession and control of it. But for this action, it would have been taken entirely away; who then for that instant had it in possession? This was sufficient asportation." In this case, the pocket-book was lifted a space of three inches from the bottom of the pocket, and therefore every part of it, was removed from the space which that part occupied before the prisoner touched it.

In the case of *Eckels* v. *State*, reported in 20th Ohio St. R. 508, the prisoner was indicted and convicted for simple larceny and sentenced to the penitentiary upon proof of the following facts: The prisoner went into the shoe-store of K. and inquired the price of a pair of boots in the front window. K. went to the window, about forty feet distant, to get the boots, and while there saw prisoner behind the counter, with his hands down behind the counter where the money-drawer was. As K. started toward prisoner he returned to his seat in front of the counter; he was immediately arrested. There were in the drawer one hundred and twenty-one dollars in bills of different denominations, which K. had shortly before prisoner came in, assorted and arranged in three piles. When K. went to the front window the drawer was closed; when he returned it was partly open and the money had been disturbed. It was in a bunch in one corner of the drawer, with one bill hanging over the drawer. No one but the prisoner had been at the drawer; the money had the appearance of having been crumpled up in the hand, but all the money remained in the drawer. The court instructed the jury that "if the prisoner removed the money from the place where Mr. K. had placed it with the intention of stealing it, he would be guilty of larceny, even if he did not actually take it out of the drawer. If he took the money into

his hand and lifted it from the place where the owner· had placed it, so as to entirely sever it from the spot where it was placed, with the intention of stealing it, he would be guilty of the larceny, though he may have dropped it into the place where it was lying upon being discovered, and never have had it out of the drawer." Upon a writ of error the court of appeals of that State held said instruction correct, and Day, Judge, delivering the opinion of the court says: "The felony lies in the very first removing of the property; therefore the least removing of the entire thing taken, with intent to steal, if the thief thereby obtain the entire and absolute possession of it, is a sufficient asportation.

In the case of *Gettinger* v. *State*, reported in 13 Neb. 308, the prisoner was indicted and convicted for the larceny of a cast iron fly wheel worth one hundred and fifty dollars. The proof showed that the prisoner broke the wheel to pieces, and that as old iron it was worth about forty dollars. It was insisted that as the prisoner was indicted for the larceny of a cast iron balance wheel, and the proof showed it was first broken to pieces—and in that condition carried away, and as the jury in their verdict finding the prisoner guilty, also found the value of the wheel as old iron to be forty dollars, that there was no *taking* of the *wheel*, and therefore there was a fatal variance between the allegations and proofs. But the supreme court of that State, held that to take an article signifies merely "to lay hold of, grasp or seize with the hand or otherwise," and that the act of the prisoner in laying hold of, and with a sledge breaking the wheel in pieces *animo furandi*, was a taking within the meaning of the criminal law, and the least removal of it, even of a hair's breadth, is a sufficient asportation of it.

All the above reported cases were prosecutions for simple larceny, and they are just such prosecutions and only such, as the laws of this State would authorize for the same offences.

In prosecutions for *stealing from the person*, it has always been held necessary to allege and prove that the thing taken was *removed completely from the person*, and where it appeared that the thing taken was not so removed, the prosecution for this particular form of the offence failed, even where the

facts proved were sufficient to show the asportation necessary to be proved, in a simple larceny of the same property, for as we have already shown every larceny from the person includes the simple larceny of the same property.

One of the earliest and best-considered cases is that of *Rex* v. *Thompson*, 1 Ry. & Moo. 78. In this case the prisoner was indicted for *stealing from the person* of the prosecutor a pocket-book and contents, upon the following facts: The book was in the inside front pocket of the owner's coat; it was just lifted out of the pocket an *inch above the top* of the pocket. By the forcible act of the owner the hand of the prisoner was brushed away and the book fell back into the pocket. The prisoner was convicted and had *sentence of death for that offence.* Upon a case reserved for the consideration of the ten judges who sat in review of this judgment, six of the judges held that the prisoner was not rightly convicted of *stealing from the person*, because from first to last, the pocket-book remained about the prosecutor. The other four judges were of a contrary opinion. But *all of the ten judges* were of one mind, that the simple larceny was complete and recommended a reduction of the sentence. This conclusion could only have been reached, because the simple larceny was included in the offence for which the prisoner was indicted, and because the *asportation* was complete, when the pocket-book had been lifted with felonious intent one inch above the top of the pocket, for every part of the pocket-book had been removed from that space, which that part had occupied before the prisoner "laid hold of, seized or grasped it."

In the case of *Reg.* v. *Simpson*, Dears. C. C. 421, the prisoner was indicted, convicted and had sentence of death, for stealing from the prosecutor a watch, upon the following facts: It appeared that the watch was carried by the prosecutor in the pocket of his waistcoat, and the chain attached to the watch, was at the other end passed through a button-hole of his waistcoat, where it was kept by the watch key, turned so as to prevent the chain from slipping through. The prisoner took the watch out of the prosecutor's pocket, and forcibly drew the chain out of the button-hole, but at that moment the prisoner's hand was seized by the prosecutor's wife, and it then appeared, that although the chain and

watch key had been drawn through the button-hole, the point of the key had caught upon another button, and was thereby suspended. It was contended there that the prisoner was guilty of an attempt only, but the court trying the cause thought, that as the chain had been removed from the button-hole, the felony (the stealing from the person), was complete, and upon a case reserved for the opinion of the judges, it was held that the conviction was right, and "that the case was precisely similar to *Lapier's Case*, 2 East, P. C. 557, the ear, in that case, is like the button-hole in this, and the curl (of the lady's hair) is like the button, the watch was no doubt temporarily, though but for a moment, in the possession of the prisoner;" that is to say, between the instant of time when the key was drawn out of the button-hole, and when it caught upon the button, and it was removed from his person "at least a hair's breadth;" which has been held to be sufficient.

In the case of the *Com'lth* v. *Luckis*, 99 Mass. 431, the prisoner was indicted for an attempt to commit the larceny of a pocket-book from the person of an unknown woman. The facts proved, showed that the prisoner put her left hand into the pocket of an old lady; an officer who saw the act stepped forward and caught the prisoner by her left wrist, while her hand was in the pocket. The prisoner raised her hand in the air, with the dress, her hand still being in the pocket, and the officer's hand still upon her hand, and the prisoner bringing her hand down again suddenly, tore the dress and pocket to the ground. The pocket-book dropped after the dress and pocket were torn. There *was no evidence* that the prisoner placed her hand upon the pocket-book, but other facts were proved tending to show the prisoner's guilt. It was insisted on behalf of the prisoner, that these facts showed a sufficient *taking and carrying away* to complete the offence of larceny from the person and that therefore the indictment for the *attempt* was not supported, and that any *movement* made by the prisoner, to alter the position of the pocket-book, with a view to steal it, was a sufficient asportation, and that no manual taking was necessary. The court being asked, refused to so instruct the jury; and upon a writ of error, Colt, Judge, delivering the opinion of the supreme

court, affirming the judgment of the court below, upon the verdict of the jury finding the prisoner guilty, says, " that to justify a conviction in this case, it was necessary to show that the *prisoner failed* or was prevented in the execution of the offence of *stealing from the person,* an offence which could only be complete when the property sought to be taken was in the full *custody and control of the prisoner.* It is not necessary that the pocket-book should *have been removed from the pocket, if once within the grasp of the thief, to constitute larceny.* But the prisoner must for an instant at least have had perfect control of the property." It may be proper here to state that the indictment against Luckis, was under a statute providing for the punishment of an *attempt,* "to commit the crime of larceny, by stealing from the person of another, which last offence, without regard to the value of the property stolen, is punishable by imprisonment in the penitentiary not exceeding five years, or in the jail not more than two years." By the same statute simple larceny of goods exceeding in value one hundred dollars is punished with imprisonment in the State's prison, not more than five years or by fine not exceeding six hundred dollars and confinement in jail two years; or if the property stolen be of the value of one hundred dollars, or under, it shall be punished by imprisonment in the State's prison or jail not more than one year, or by fine . not exceeding three hundred dollars  G. Stat. 1860 ch. 161 §§ 17 and 18.

The case of *Flinn* v. *State,* reported in 42 Tex. 301, was an indictment under the 76th article of the penal code of Texas defining the offence of theft from the person of an article of any value, and prescribing the punishment thereof by imprisonment in the penitentiary not less than two nor more than ten years. This statute is in substance the same as that of 8th Elis. c. 4, *supra,* for it requires the theft to be done "privately from the person of another, and must be committed without the knowledge of the person whose property is taken, or so suddenly as not to allow time to make resistance before the property is carried away," and then declares that "it is only necessary that the stolen property *should* have *gone* into the *possession* of the thief and it need not be carried away to complete the offence."

Under this statute the said Flinn was indicted and convicted of the crime of theft from the person of one Walch. The facts proved were as follows: On the night of 20th November, 1874, Walch was at the door of the theater in the city of Galveston. As he was trying to get out of the crowd he felt himself jostled several times, and a hand in his pocket, and turning immediately he found the prisoner Flinn with his hand on his (Walch) pocket-book. Flinn pulled it from the bottom of his pocket, but had not taken it entirely out of his pocket, it being half in and half out of the pocket, and the other half in Flinn's hand, but the pocket-book never left the person of W.

Upon a writ of error the supreme court of that State held, "that there was a sufficient taking from the person, and also that there was a sufficient possession of the pocket-book (by the prisoner) if the same was taken with a felonious intent, to constitute the crime of theft from the person under said article of the code." It will be observed that in this case the pocket-book was not only feloniously *taken*, but was in fact, according to all the precedents of the common law in cases of *simple larceny*, feloniously carried away, for every part of said pocket-book was removed from that space which said part had occupied before it was siezed on grasped by said Flinn, and the court held *that* removal was a sufficient taking from the person, although it was proved that the pocket-book was in fact never removed from the person of the owner.

All the authorities agree, that if the taking of the property be felonious, and the slightest removal of the property from the place it occupied before be made by the party so taking the same, his guilt does not depend upon the length of time he held absolute possession and control thereof, nor upon the distance to which he may have removed the same; nor whether he released or relinquished his grasp, seizure or hold thereon, because he repented of his act, or was hindered, interrupted or prevented by any cause whatever from carrying the property away, for the crime was completed by the very first act of felonious removal of said property.

We conclude, therefore, that in any simple larceny there must be a felonious and complete severance of the property from the possession of the owner thereof, and that the

thief must have had at least for an instant of time, complete and absolute control and possession of the stolen property, and that during this possession and control of such property the thief must have feloniously removed the same from the place it occupied before he laid hold of, grasped or seized the same, before said offence is completed; but where the property has been feloniously taken, the slightest removal thereof by the thief from the place it occupied, even if it be but a hair's breadth, with intent to steal the same, the offence of simple larceny is complete. And although the whole of the article so taken, be not removed from the whole space, which the whole article occupied before it was so taken, yet if every part thereof be removed from the space which that particular part occupied just before it was so taken, such removal is a sufficient asportation to complete the offence of simple larceny. It only remains to apply the principles herein established to the case at bar. The facts proved show conclusively, and the jury by their verdict found, that the taking of the pocket-book and the thirty-eight dollars contained therein was felonious, it is equally clear from the facts proved, that the prisoner did thrust his hand in the pocket of Elizabeth Emblen, which was "a pretty deep pocket," and grasp, seize or lay hold of said pocket-book and contents and raised the pocket-book to the top of her pocket where he released it, leaving the pocket-book hanging partly out of her pocket, with some of the bills hanging out of it; that feeling his hand in, or coming out of her pocket, said Elizabeth suddenly caught the prisoner's hand, while it was in, or just being withdrawn from the pocket; that he was too strong and quick in his motion for her to hold his hand, but her effort to do so, and her outcry—*"you dirty rascal"*— caused him to relinquish his hold of the pocket-book, and she reclaimed it, which an instant before was in his clutch, in his complete and absolute control. It was in a pretty deep pocket, it was removed, lifted from the bottom to the top of the pocket, he did it, the circumstances tended to show the act was felonious, and the jury so found it by their verdict. While the pocket-book was not wholly removed from the pocket, the proof shows that every part of the pocket-book was removed by the prisoner from that space which

that particular part occupied just before he thrust his hand in her pocket; the taking was felonious, the asportation was sufficient, the simple larceny of the pocket-book and of the thirty-eight dollars was complete, and all these facts are also found by the verdict of the jury. The verdict was *not contrary* to the evidence, it was in accordance with, and fully warranted by the evidence. It would have been strange, if with these facts before them they had found any other verdict. We are therefore of opinion that the said circuit court did not err in overruling the prisoner's motion to set aside said verdict and award him a new trial.

The judgment of the circuit court of Ohio county is affirmed with costs.

THE OTHER JUDGES CONCURRED.

AFFIRMED.